UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James Daniel ALEXANDER,<br><br>Petitioner,<br><br>v.<br><br>Raymond MADDEN,<br><br>Respondent. | Case No.: 15-cv-2498-GPC-AGS<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner, a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenges the California Department of Corrections and Rehabilitation's denial of post-sentence conduct credits. The Court has reviewed the pertinent portions of the record and has considered the legal arguments presented by both parties. For the reasons discussed below, the petition is **DENIED**.

## **BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). On September 7, 1995, Petitioner was found guilty of first degree burglary in violation of California Penal Code sections 459 and 460. (ECF No. 1-1 at 4.) Having sustained a prior felony conviction pursuant to Penal Code section 667(d)(1) and two prior strike convictions under Penal Code section 667(e)(2), Petitioner was sentenced under California's Three Strikes law to an indeterminate term of thirty years to life in state prison with the possibility of parole. (*Id.*)

1

On February 10, 2014, a three-judge panel ordered California adult correctional institutions to implement policies to reduce prison populations. (*See* ECF No. 1-1 at 44-45.) Specifically, the Order required institutions to increase post-sentence conduct credits prospectively for non-violent second strike offenders and minimum custody inmates. (*Id*. at 45.)

On May 30, 2014, the CDCR issued a memorandum notifying all CDCR inmates of the changes to the post-sentence conduct credit provisions.[1] (ECF No. 1-1 at 40.) In response, Petitioner filed an administrative appeal with the CDCR complaining about his ineligibility to receive the 33.3 percent good conduct credit awarded to qualifying second-strike offenders. (*See* ECF No. 1-2 at 1.) Petitioner argued such decision was a violation of his constitutional right to equal protection. (*Id*.) Petitioner's administrative appeal was denied at the third and final level of review on April 15, 2015.[2] (*Id*. at 7.)

Following Petitioner's administrative denial, Petitioner filed petitions for writ of habeas corpus in state court challenging the CDCR's denial of post-sentence conduct credits on equal protection grounds. (*See generally* ECF No. 1-1 at 9-35.) Upon exhausting his state court remedies, Petitioner filed the present petition with this Court on November 3, 2015. (ECF No. 1.)

---

[1] The memorandum provides: "As a result of the Federal Court Order effective February 10, 2014, non-violent offenders sentenced as a *Second Striker* pursuant to Penal Code (PC) Sections 667(b)-(i) or 1170.12, whose prison conduct credit is limited to 20 percent and who are not required to register as a sex offender pursuant to PC Section 290 are eligible to earn 33.3 percent to reduce the prison term." (ECF No. 1-1 at 40) (emphasis added.)

[2] Effective May 1, 2017, the CDCR further amended the good conduct credit provisions of the California Code of Regulations to permit a higher percentage of good conduct credit to qualifying inmates. 15 C.C.R. § 3043.2. Specifically, sections 3043.2(b)(1)-(3) allow non-violent second and third strike offenders to earn between 33.3 to 50 percent of credit. The changes, which functionally give Petitioner his requested relief prospectively, are not retroactive. (ECF No. 24 at 2.) On July 27, 2017, Petitioner filed a motion for preliminary injunction asking the Court to require the CDCR to retroactively apply the newly implemented good conduct credit provisions, which the Court denied. (*Id*. at 4.) Petitioner's arguments concerning section 3043.2 are not before the Court because they were not included in his petition and he has never moved to amend it. (*See generally* ECF No. 1.) Moreover, there is no evidence he has exhausted those arguments in state court. Accordingly, the Court does not discuss the amended good conduct credit provisions.

In his petition, Petitioner requests an evidentiary hearing and challenges Respondent's failure to provide him with post-sentence conduct credits to reduce the length of his sentence. First, Petitioner argues he is being "denied commensurate good conduct credit benefits that have been afforded to similarly situated prisoners." (*Id*. at 6.) Next, Petitioner argues that his "fundamental right of physical/personal liberty" is at issue and that he is a "class of one" for purpose of his equal protection claim. (*Id*.) Finally, Petition argues there is "no legitimate governmental interest in denying [him] prison conduct credits." (*Id*.)

## DISCUSSION

### A. Standard of Review

A habeas petition will not be granted unless the state court's adjudication was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Further, a federal court shall presume that a determination of factual issues made by a state court is correct, and Petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The California Supreme Court denied Petitioner's habeas petition without comment. However, federal courts presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). Thus, the Court will consider the Orange County Superior Court's decision denying the petition. In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

## B. Equal Protection Analysis

Petitioner, a third-strike offender under California's Three Strikes law, claims the CDCR is violating his equal protection rights by denying him the post-sentence conduct credits available to second-strike offenders.

### 1. "Class of One" Equal Protection Framework

Petitioner formulates his equal protection claim as a "class of one" claim. (*See* ECF No. 1-1 at 6.) The Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). However, Petitioner is not a "class of one" for equal protection purposes. Petitioner is a non-violent third-strike offender who is being denied post-sentence conduct credits awarded to non-violent second-strike offenders. To bring a "class of one" equal protection claim, Petitioner must allege that he is being intentionally treated differently from the non-violent third-strike offenders he *is* similarly situated to, but instead he argues that all third-strike offenders are treated differently than second-strike offenders without a rational basis. Thus, Petitioner's "class of one" claim fails for the simple reason that Petitioner is not similarly situated to those offenders who are eligible for post-sentence conduct credits because he is a third-strike offender. Accordingly, the Court will address Petitioner's arguments under the traditional equal protection framework.

### 2. Traditional Equal Protection Framework

The Supreme Court has defined the Equal Protection Clause to mean "that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985) (internal quotations omitted). The first step in any equal protection analysis is to identify Petitioner's classification or group. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). Petitioner must show that the law has been applied in a discriminatory manner on him or

4

imposes different burdens on different groups. *Id.*; *Christy v. Hodel*, 857 F.2d 1324, 1331 (9th Cir. 1988). The next step requires the Court to determine the level of scrutiny with which the Court should review the statute. *Freeman*, 68 F.3d at 1187. A heightened standard of review is applied only "when a statute classifies by race, alienage, or national origin" or infringes on fundamental rights guaranteed by the Constitution. *Cleburne*, 473 U.S. at 440. By contrast, classifications that do not involve a suspect class or fundamental rights are subject to the rational relationship test and accorded a strong presumption of validity. *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).

The first inquiry into Petitioner's equal protection claim requires an analysis of Petitioner's classification. Petitioner claims that non-violent second-strike offenders are receiving post-sentence conduct credits which he has been denied. However, Petitioner is a non-violent third-strike offender. Accordingly, Petitioner's ineligibility to receive post-sentence conduct credits is based on his classification as a third striker rather than a second striker.

Petitioner further argues that his preclusion from receiving post-sentence conduct credits also violates his fundamental right to physical and personal liberty, which would require heightened review. However, the Supreme Court has held that the Constitution does not safeguard any right to good-time credit. *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). Moreover, many federal circuits have held that there is no liberty interest in the potential to earn good-time credits. *See Abed v. Armstrong*, 209 F.3d 63, 66–67 (2d Cir. 2000); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir.1995); *Conlogue v. Shinbaum*, 949 F.2d 378, 380 (11th Cir. 1991). Thus, because the classification between second-strike offenders and third-strike offenders does not involve a suspect class and no fundamental rights are implicated, the Court will address Petitioner's arguments under the rational basis test.

Petitioner argues that there is "no legitimate governmental interest in denying [him] the prison conduct credits." (ECF No. 1 at 6.) To support his claim, Petitioner offers only conclusory assertions that some inmates that have been convicted of the same crime–or

5

even of worse crimes–are being afforded the benefit of the new post-sentence conduct credit provisions. Specifically, Petitioner provides five examples of inmates who were convicted of crimes similar to his own, but did not receive a third strike because of conditions in their plea bargains. (*See* ECF No. 1-1 at 23-24.)

On this issue, the state court found a rational basis, stating that "[t]he purpose of the Three Strikes law is 'to impose longer terms of imprisonment on defendants with two strikes and generally still longer terms on defendants with three strikes." (ECF No. 1-1 at 5) (quoting *In Re Cervera*, 24 Cal. 4th 1073, 1077 (2001)). The state court's finding is consistent with Supreme Court precedent holding that states have a "legitimate interest 'in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law.'" *Texas v. McCullough*, 475 U.S. 134, 144 (1986) (quoting Rummel v. Estelle, 445 U.S. 263, 276 (1980)).

Disparities in sentencing for similar crimes occur as a result of the discretion judges have to sentence certain crimes as a misdemeanor or felony. *Ewing v. California*, 538 U.S. 11, 17 (2003). Judges consider various factors in determining sentences, such as the gravity of the current offense, tendency towards recidivism, and past criminal history. *Id*. at 13. In *McQueary v. Blodgett*, 924 F.2d 829, 845-35 (9th Cir. 1991), the Court found there was no denial of equal protection in having persons subject to different sentencing systems.

State legislatures have the discretion to treat situations differently where there is a difference in facts, and they are justified in making these classifications as long they are rationally related to a legitimate state purpose. *Plyler v. Doe*, 457 U.S. 202, 216 (1982). The Supreme Court found legitimate California's Three Strikes law's goal of treating three strikers more harshly than one or two strikers. *See generally Ewing v. California*, 538 U.S. 11 (2003). In *Ewing,* the Supreme Court specifically held that California has an interest in recidivism and crime deterrence, which are considered legitimate government interests. *Id*. at 28. Further, the Supreme Court held that California has a rational basis for increasing sentences to further the goal of reducing crime. *See id*. at 30. Thus, there is a rational basis

6

for deciding post-sentence conduct credit eligibility based on inmates' classifications under California's Three Strikes law.

**C. Evidentiary Hearing**

Petitioner complains that had he been given an evidentiary hearing in regard to his state court petitions, he would have better developed the evidence as to the number of inmates receiving post-sentence conduct credits who committed his same offense. (ECF No. 1 at 10.) As Respondent points out, such a factual development would have been cumulative to the evidence and irrelevant to the legal analysis. (ECF No. 11-1 at 8.) The state court's decision was based on a presumption that even if Petitioner's factual assertions were true–that there were other inmates who committed the same or similar crimes as he who are receiving post-sentence conduct credits–that Petitioner as a third-strike offender is *not* similarly situated to *any* second-strike offender that would entitle him to relief under an equal protection analysis (*See* ECF No. 1-1 at 5.) Thus, the state court's denial of Petitioner's request for an evidentiary hearing does not show that the state court made any sort of factual error in determining whether Petitioner was entitled to relief.

"A habeas petitioner is entitled to an evidentiary hearing if: (1) the allegations in his petition would, if proved, entitle him to relief; and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." *Phillips v. Woodford*, 267 F.3d 966, 973 (9th Cir. 2001) (emphasis omitted). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Because this petition can be resolved on the record before the Court, the Court need not hold an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, after an independent review of the record, the Court concludes the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the Court **DENIES** Petitioner's habeas petition. Rule 11 of the Rules Governing Section 2254 Cases states that

7

"[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Neither is the case here, and so the Court declines to issue the certificate of appealability. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: October 15, 2018

Hon. Gonzalo P. Curiel
United States District Judge